IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TIBBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 16-5 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| NORTHERN CAMBRIA | ) | |
| SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

I.    Introduction

This matter comes before the Court on a Motion to Disqualify Counsel (ECF No. 37) filed

by Defendant Northern Cambria School District seeking to disqualify the law firm of Steele

Schneider and its attorneys, Kelli J. Vandergrift and Marcus B. Schneider, from continuing to

represent Plaintiff Joy Tibbott in this case. Plaintiff opposes the motion. (ECF No. 38). For the

following reasons, the Court will **DENY** the motion.

II.    Jurisdiction and Venue

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28

U.S.C. § 1391(b).

III.    Background

Plaintiff was formerly the principal of Northern Cambria High School. After leaving that

role (for reasons that will be explained in greater detail below), she transitioned to a position in

the School District's Central Administrative Office.  She was furloughed from that position in

May 2014. Thereafter, she applied for several positions with the School District, for which she was not selected. Instead, she was placed in an Eighth-grade teaching position, which has resulted in a lower salary and less seniority.

On January 6, 2016, she initiated this action, alleging that the decision to furlough her and the refusal to place her in the positions for which she applied constituted retaliation under Section 504 of the Rehabilitation Act, Title VII, the ADA, and the ADEA. The School District filed an Answer on January 26, 2016. Pursuant to this Court's most recent Scheduling Order, fact discovery was to have ended on May 17, 2017. (ECF No. 30). Meanwhile, on February 3, 2017, Plaintiff filed a Motion for Leave to File Amended Complaint (ECF No. 26), in which she seeks to add a procedural due process claim. More specifically, she claims that she learned during discovery that her "furlough" was actually a "termination" and, in turn, that she should have been afforded "due process under the Fourth Amendment, in addition to a panoply of state-created rights supplied by the Pennsylvania School Code." (ECF No. 26 ¶ 20).

On March 24, 2017, the School District filed this motion (ECF No. 37), seeking to disqualify Steele Schneider from further representing Plaintiff in this matter. According to the motion, Charles Steele,[1] who is affiliated with the law firm of Steele Schneider, represented Donna Frontino and her children, Adriana and Joseph, in a matter against the School District and Plaintiff in early 2013. Donna Frontino, through Mr. Steele, claimed that Plaintiff and the School District violated her children's rights under Title IX and the equal protection clause of the Fourteenth Amendment. The matter was settled during mediation in February 2013 before a

---

[1] Mr. Steele is currently suspended from the practice of law both in this District and the Commonwealth of Pennsylvania. *See* ECF No. 12 filed at Misc. No. 97-142.

complaint was filed. As part of the settlement, the parties agreed, among other things, that Plaintiff would transition from her position as high school principal to a position in the School District's Administrative Office, where she would continue to work throughout the 2013-2014 and 2014-2015 school years. The parties further agreed that Plaintiff would not have any contact with the Frontino children.

The effect of the settlement agreement is critical to the School District's defense of Plaintiff's claims in this case. In the School District's view, hiring Plaintiff for any of the positions for which she would have applied "would have been in direct violation" of the settlement agreement. (ECF No. 37 ¶ 26).

In its motion, the School District argues that Steele Schneider should be disqualified for two reasons: (1) "Attorney Steele's representation of the Frontinos and [his] participation in drafting the Settlement Agreement and Release" creates a conflict of interest under Rules 1.7 and 1.9 of the Pennsylvania Rules of Professional Conduct; (2) "Attorney Steele will be a necessary and material witness," so Steele Schneider's continued representation of Plaintiff would violate Rule 3.7(b) of the Rules of Professional Conduct. (ECF No. 37 at ¶¶ 38, 61).

## IV.    Legal Standard

A district court "may disqualify an attorney only when 'disqualification is an appropriate means of enforcing the applicable disciplinary rule,' keeping in mind 'any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.'" *Jackson v. Rohm & Haas Co.*, 366 F. App'x 342, 347 (3d Cir. 2010) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)); *Mumma v. Bobali Corp.*, 382 F. App'x 209, 210 (3d Cir. 2010). To disqualify opposing counsel, a

movant must clearly show that continued representation by opposing counsel would be impermissible under the Rules of Professional Conduct. *Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408 (W.D. Pa. Nov. 19, 2007) (citing *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). Disqualification is a harsh measure which is generally disfavored by courts, and courts have an obligation to prevent parties from using disqualification motions for tactical purposes. *Id.* (citing *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992)).

## V. Discussion

The School District seeks to disqualify Steele Schneider and Attorneys Vandergrift and Schneider on the basis that the firm is operating under an imputed conflict of interest, as well as because Mr. Steele (and perhaps other members of the firm Steele Schneider) will be necessary witnesses in this action. Plaintiff raises four arguments in opposition to the motion: two procedural and two substantive. Procedurally, Plaintiff argues that the School District lacks standing to seek to disqualify Steele Schneider because it is not a former or current client of that firm. Then, assuming that standing exists, Plaintiff goes on to argue that the School District waived its right to file a motion to disqualify by waiting too long to file it. On the merits, Plaintiff argues that there is not, in fact, a conflict of interest because this matter is not "substantially related" to the prior matter involving the Frontinos. Plaintiff also argues that Mr. Steele will not be a material witness – or at least it is too early to tell whether that will be the case, so the Court should defer ruling on this issue until trial.

## A.   Standing

The Court begins with the standing issue.[2] The Third Circuit has not definitively

resolved whether a party who is not a client or former client has standing to seek opposing

counsel's disqualification. *See In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 402 n.20 (3d Cir.

2006) (citing *In re Congoleum Corp.*, 426 F.3d 675, 686–87 (3d Cir. 2005); *In re Corn Derivatives*

*Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984)) ("assum[ing] without deciding that [non-client]

defendants have standing to raise the disqualification issue"). The courts that have addressed

the issue have reached different conclusions. *See Santander Sec. LLC v. Gamache*, 2017 WL

1208066, at *3 (E.D. Pa. Apr. 3, 2017) (collecting cases). "In many federal courts, only a current or

former client has standing to seek disqualification of an attorney appearing before the court." *In*

*re Gress*, 2015 WL 1744165, at *3 (Bankr. M.D. Pa. Apr. 14, 2015) (citing *Mills v. Hausmann–*

*McNally, S.C.*, 992 F. Supp. 2d 885, 891 (S.D. Ind. 2014)). This rule, which appears to be the

majority view, "is premised on the understanding that Rule 1.7 is intended to protect the

interests of persons harmed by the conflict, thus, they are the proper parties to seek

disqualification." *Id.*

As the District Court for the Eastern District of Pennsylvania has explained:

The leading decision is *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83
(5th Cir. 1976). The defendant company moved to disqualify plaintiff's counsel
because his firm had previously represented a co-defendant in a related patent
dispute. Id.at 85-86. The Fifth Circuit noted that courts usually will not remove
an attorney on conflict grounds, "unless the former client moves for
disqualification." *Id.* at 88. The Court explained that permitting former clients to
seek disqualification serves to "aid the frank exchange between attorney and
client" by "helping to preclude even the possibility that information given in

---

[2] "[S]tanding in this disqualification context is distinct from Article III standing" in the sense that it is not "jurisdictional." *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 402 n.20 (3d Cir. 2006). Rather, "it is "more akin to standing to assert rights under the Fourth Amendment[.]" *Id.*

confidence by the former client will be used without the client's consent." *Id.* This concern was inapplicable where the former client does not object to the representation. *Id.* Further, like virtually all other courts, the Fifth Circuit had long held that once the moving party showed that the prior and present matters were substantially related, this triggered a presumption that "confidences potentially damaging to the client" were disclosed to the challenged attorney in the prior matter, and that the attorney's firm shared those confidences, compelling its disqualification. *Id.* at 89. Allowing a non-client to seek disqualification would "place in the hands of the unauthorized surrogate [those] powerful presumptions which are inappropriate in his hands." *Id.* at 90.

*Santander Sec. LLC v. Gamache*, 2017 WL 1208066, at *4. The *Yarn Processing* court, moreover, distinguished cases in which non-clients had been found to having standing, finding them to represent, "at most, narrow exceptions to this general rule." *Yarn Processing*, 530 F.2d at 89.

On the other hand, a number of courts – including perhaps a majority of courts in this Circuit – "have conferred standing on non-client litigants to seek opposing counsel's disqualification." *Id.* at *3 (citing *Bosh v. Renco Grp., Inc.*, 2016 WL 3633079, at *4 (W.D. Pa. July 7, 2016); *Cafaro v. HMC Intern., LLC*, 2012 WL 4857763, at *6 n.8 (D.N.J. Oct. 11, 2012); *In re Kirchner*, 2010 WL 1855861, at *2 (Bankr. E.D. Pa. May 5, 2010); *In re Pittsburgh Corning Corp.*, 308 B.R. 716, 721 (Bankr. W.D. Pa. 2004); *Essex County Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 431 (D.N.J. 1998); *Schifli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 1994 WL 62124, at *2-3 (D.N.J. Feb. 23, 1994); *Pa. Water Works Supply Co. v. Bucks Cnty. Bank & Trust. Co.*, 1991 WL 161473, at *2 (E.D. Pa. Aug. 19, 1991); *Duca v. Raymark Indus.*, 663 F. Supp. 184, 188 (E.D. Pa. 1986)). For the most part, these courts, "relying on a court's well recognized power to control the conduct of the attorneys practicing before it," ground their holdings in the "reporting duties imposed on attorneys by the Model Code of Professional Responsibility and the Model Rules of Professional Conduct." *Colyer v. Smith*, 50 F. Supp. 2d 966, 970 (C.D. Cal. 1999) (citations

omitted). Other courts, however, have recognized that standing may exist, even apart from any duty on attorney to report ethical lapses by their colleagues, in cases "where the ethical breach so infects the litigation . . . that it impacts the moving party's interest in a just and lawful determination of her claims." *Id.* Under such circumstances, "the party who finds [its] claims obstructed has standing." *Id.; see In re Pressman-Gutman*, 459 F.3d at 402 (quoting Pa. R.P.C. 1.7 cmt. (2002)) (noting that under the then-current version of the Pennsylvania Rules of Professional Conduct, "opposing counsel properly may raise disqualification '[w]here the conflict is such as clearly to call in question the fair and efficient administration of justice'").

Having considered the authority on both sides of the issue, the Court is inclined to conclude that the School District does not have standing to challenge Steele Schneider's continued representation of Plaintiff. The rationale that most courts have used to find non-client standing – i.e., the duty imposed on lawyers to report ethical violations – is not applicable in Pennsylvania. As one district court in this circuit has cogently explained:

> Attorneys in Pennsylvania have a duty to report a conflict of interest "that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer" to the "appropriate professional authority." Pa. R.P.C. 8.3. (2012). "The term 'substantial' refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware." *Id.* at cmt. (3). Comment (5) to the rule advises that "a report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances." *Id.* at cmt. (5). Accordingly, premising standing to seek Counsel's disqualification before this Court on an lawyer's duty to report violations of the ethical rules to the disciplinary agency may be stretching the bounds of standing further than the rationale extends.

*In re Gress*, 2015 WL 1744165, at *3. Additionally, while non-client standing has also been found in certain cases involving glaring conflicts of interest that call into "'question the fair or efficient administration of justice,'" *In re Pressman-Gutman*, 459 F.3d at 402 n.20, this does not appear to

be one of those cases. Indeed, the School District has not attempted to explain how the alleged

conflict will affect its ability to fairly litigate this case.

Nevertheless, absent any definitive authority from the Third Circuit and in light of the

conflicting points of view on the issue, the Court will assume, *arguendo*, that the School District

has standing and resolve the motion on other grounds.

### B.     Waiver

The Court next turns to the issue of whether the School District has waived any rights it

may have had to seek Steel Schneider's disqualification based on the alleged conflict of interest.

"A motion to disqualify should be made with reasonable promptness after a party discovers the

facts which lead to the motion." *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d

988, 992 (8th Cir. 1978). A litigant cannot "delay filing a motion to disqualify in order to use the

motion later as a tool to deprive his opponent of counsel of his choice after substantial

preparation of a case has been completed." *Id.* As a result, courts – including this one – have not

hesitated to conclude that "[w]aiver is a valid basis for the denial of a motion to disqualify."

*Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.*, 2012 WL 364050, at *2 (W.D. Pa. Feb. 2, 2012)

(citations omitted)., The Court must consider the following factors when determining whether a

party has waived its right to move for disqualification: "(1) the length of the delay in bringing

the motion to disqualify; (2) when the movant learned of the conflict; (3) whether the movant

was represented by counsel during the delay; (4) why the delay occurred; and (5) whether

disqualification would result in prejudice to the nonmoving party." *Id.*

Applied here, these factors weigh in favor of concluding that the School District waived

any right that it may have had to move to disqualify Steele Schneider. The School District's

counsel learned of the alleged conflict as early as November 2015, when Mr. Steele began representing Plaintiff in her hearing before the School Board regarding her furlough and non-selection. At that point, counsel for the School District broached the subject with Mr. Steele. In response, Mr. Steele explained that he did not believe a conflict existed. Yet, he invited counsel for the School District to provide "any additional information or insights relevant to the alleged conflict of interest." (ECF No. 38-4 at 1). There is nothing in the record to suggest that the School District's counsel raised any additional concerns with Mr. Steele. That is, until he filed this motion on March 24, 2017 – some 16 months after the issue of the potential conflict was first raised. "Such a lengthy delay is sufficient to justify a finding of waiver." *Sauer*, 2012 WL 364050, at *3 (citing *Liberate Techs. LLC v. Worldgate Commc'ns, Inc.*, 133 F. Supp. 2d 357, 359 (D. Del. 2001) (finding that the plaintiff waived any conflict by "wait[ing] several months to bring th[e] issue to the court's attention despite ongoing settlement talks"); *Javorski v. Nationwide Mut. Ins. Co.*, 2006 WL 3242112, at *8 (finding waiver where the defendant: (1) failed to move for disqualification in any previous action where counsel represented a client adversarial to the defendant; and (2) moved to disqualify counsel "approximately four months after filing this action"); *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 498 (D. Del. 2006) (concluding that the plaintiff waived her objection to defense counsel's continued representation of the defendant where the plaintiff waited nine months to file a motion to disqualify, during which time she was represented by counsel)).

While the School District contends that "it was not until the Parties began discovery efforts that [it] knew or should have known that an actual conflict of interest exists," the Court is not persuaded by this argument. None of the information that the School District purportedly

learned for the first time in discovery – "that Plaintiff would make the assertion that she was unaware of the consequences of the Settlement Agreement" and that Plaintiff claims she "never agreed to the terms of the Settlement Agreement" (ECF No. 41 at 5) – has any bearing on whether a conflict exists. And contrary to the School District's argument, the fact that Plaintiff has moved to file an Amended Complaint does not have any bearing on that issue, either. In fact, the School District knew all that it needed to know to seek Steele Schneider's disqualification in November 2015 when it learned that Mr. Steele was representing Plaintiff in her proceedings before the School Board. The issue thus could have – and should have – been formally raised at the start of this litigation, not more than a year later at the conclusion of fact discovery. In the least, counsel should have raised any continued concerns with Mr. Steele, as he was expressly invited to do.

Moving on to the third factor, the School District has been represented by counsel throughout the entire period of time at issue, which bolsters the conclusion that it could have – and should have – raised the disqualification issue earlier. As for the fourth factor, the School District has not raised any substantial justification for the delay, other than to say that it was not aware there was an actual conflict until mid-way through discovery. As already noted, though, the Court is not persuaded by that argument. Finally, with regard to the final factor, the Court concludes that Plaintiff would be prejudiced if Steele Schneider were disqualified from continuing to represent her in this matter. This case has been ongoing for 15 months, and fact discovery has ended (or was supposed to have ended by now). Not only has Steele Schneider represented Plaintiff in this matter for the duration of the litigation, but the firm also represents her in the related proceedings that are ongoing in the Pennsylvania system. Accordingly, it

would not be fair to Plaintiff to disqualify her counsel at this late juncture.

On balance, then, the Court concludes that the School District waived any right that it may have had to seek Steele Schneider's disqualification on the grounds of the alleged conflict of interest by failing to formally raise the issue earlier in this litigation.

### C.      Disqualification under Rule 3.7(b)

While the School District waived its right to seek disqualification on the basis of the alleged conflict of interest by not raising the issue sooner, the same is not true with respect to its argument that Steele Schneider should be disqualified under Pa. R.P.C. 3.7(b) because Mr. Steele (and perhaps other lawyers in the firm) will be necessary witnesses at trial. Such a challenge, by its very nature, can be raised up to the time of trial because Rule 3.7(b) is only implicated if an attorney is likely to be called as a trial witness. In fact, "[s]everal courts and at least one Pennsylvania Bar Association committee have observed that Rule 3.7 regulates only trial conduct, and have uniformly found pre-trial practice to be beyond the rule's scope." *Thompson v. Commw. of Pa. State of Police*, 2014 WL 6982634, at *2 (M.D. Pa. Dec. 10, 2014) (citing *Robinson v. Hicks*, 2009 WL 1140093, at *2 (M.D. Pa. Apr. 28, 2009) (collecting cases); Pa. Bar As'n Comm'n on Leg. Eth. & Prof. Resp. Inf. Op. No. 96–15, 1996 WL 928125, at *1). Thus, "'even when opposing counsel has played a role in the underlying facts of a case, courts generally decline to consider disqualification under [this rule] prior to dispositive motions.'" *Id.* (citing *Robinson*, 2009 WL 1140093, at *2).

The Court will employ that approach here. If, closer to the time of trial, it becomes clear that Mr. Steele or another attorney with Steele Schneider is likely to be called as a witness, the School District may then re-raise the issue of whether Plaintiff's counsel should be disqualified

pursuant to Rule 3.7(b). At this time, however, the Court will deny the motion as premature.

## VI. Conclusion

For the foregoing reasons, the School District's Motion to Disqualify Counsel (ECF No. 37) will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TIBBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 16-5 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| NORTHERN CAMBRIA | ) | |
| SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

NOW, this 13th day of June 2017, upon consideration of the School District's Motion to Disqualify Counsel (ECF No. 37) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant's Motion (ECF No. 37) is **DENIED**.

BY THE COURT:

Kim R. Gibson
United States District Judge